[Civ. No. 13998. Third Dist. Feb. 24, 1976.]

JAMES T. BELL, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF SAN JOAQUIN COUNTY,
Defendant and Respondent.

## COUNSEL

Scott R. Matthews for Plaintiff and Appellant.

Gerald A. Sherwin, County Counsel, and Robley E. George, Assistant County Counsel, for Defendant and Respondent.

## OPINION

**PUGLIA, P. J.**—Plaintiff, the duly elected incumbent judge of the Justice Court of the Tracy Judicial District, commenced this proceeding for extraordinary relief, alleging that legislation enabling the creation of a municipal court in the Tracy Judicial District is unconstitutional in its form and effect and that the county ordinance implementing the legislation must be submitted to a referendum vote of the electorate. The superior court granted the motion of the defendant San Joaquin County Board of Supervisors ("Board") for judgment on the pleadings. Plaintiff's appeal therefrom was briefed and argued before us and a written opinion was filed on April 30, 1975, disposing of the case. In that decision, we upheld plaintiff's contention that the enabling legislation was unconstitutional, but rejected his claims that he was by virtue thereof unconstitutionally deprived of his judicial office and that a referendum was required. On May 29, 1975, on petition of the Board, we granted a rehearing (Cal. Rules of Court, rule 27), thereby vacating our original opinion. On November 6, 1975, the Board moved to dismiss the appeal, basing its motion on the intervening repeal of the enabling statute, its replacement by new legislation and the amendment of the implementing ordinance. We agree with the Board that intervening legislative developments have rendered the appeal moot. Accordingly, we shall dispose of the appeal without reaching the merits.

In 1971, the Legislature authorized the Board to consolidate two contiguous judicial districts in southern San Joaquin County to create a single municipal court district consisting of two divisions. (Stats. 1971, ch. 928, § 1; repealed Stats. 1975, ch. 1061, § 1, former Gov. Code, §§ 73701-73720.)[1] The eastern division was identical to the superseded Manteca-Ripon-Escalon Judicial District and the western division included all of the displaced Tracy Judicial District. The statute became

---

[1]Hereinafter all section references are to the Government Code unless otherwise indicated.

operative February 1, 1973, the effective date of ordinance No. 1986 which was enacted by the Board December 19, 1972, and which purported to consolidate the subject judicial districts into one district consisting of two divisions and designated the resulting district the Manteca-Ripon-Escalon-Tracy Judicial District.

Briefly summarized, the statute authorized one judge in each division, each judge to be the presiding judge of his particular division (former § 73705); each division was to be deemed a district for purposes of qualification and election of judges (former § 73704); each division was to have its own clerk (former § 73706) and marshal (former § 73709), each of whom was authorized to appoint his own deputies and employees (former §§ 73707, 73708, 73710, 73711); each division was to be deemed an integral judicial district for purposes of temporary assignment of employees to another municipal court in the county (former § 73717), and for purposes of according rights of succession to comparable positions to employees of the abolished districts (former § 73718).

Preliminarily, we dispose of two issues which, arguably, are not affected by the intervening legislative changes to which we have referred but which, as we shall explain, are not before us on rehearing. Both of these issues were decided adversely to plaintiff in our original opinion. We held therein that the trial court properly refused plaintiff's request for an order compelling the Board to hold a referendum on ordinance No. 1986 within the newly constituted judicial district. We explained that there is no authority whereby the electorate of a geographical area less than but included within the county can compel a referendum on a county ordinance. Moreover, we pointed out that the petitions submitted by plaintiff to the county clerk were signed by less than 10 percent of all the voters in the county (and, for that matter, in the consolidated judicial district) who cast ballots for gubernatorial candidates in the most recent such election. (See Elec. Code, §§ 3752, 3753.)

The other issue not affected by intervening legislative changes is tendered by plaintiff's contention that the abolition of the judicial office to which he had been elected and its replacement with a different judicial office (see § 71084)[2] to which he, a nonlawyer, cannot succeed

---

[2]Government Code section 71084 provides in part: "Whenever a municipal court is established in a district in which a justice court was previously established or in a district formed from territory formerly included in justice court districts, the justice court shall cease to exist within the district for which the municipal court is established, and the term of office of the judges of justice courts situated wholly within such district shall terminate upon the selection and qualification of the first judges of the municipal court. . . ."

(Cal. Const., art. VI, § 15)[3] violates both his constitutional rights and those of the electorate of the Tracy Judicial District who are thus deprived of their duly chosen office holder. Our reasons for rejecting that contention proceeded from the constitutional power of the Legislature to divide the several counties into municipal and justice court districts and to provide for the organization of municipal and justice courts. (Cal. Const., art. VI, § 5; fn. 6, *post*, p. 634.) We held that the constitutional power which created plaintiff's office may likewise, in the exercise of its sovereign power, abolish it. (*Martello* v. *Superior Court* (1927) 202 Cal. 400, 408 [261 P. 476]; see also *Woodmansee* v. *Lowery* (1959) 167 Cal.App.2d 645, 650 [334 P.2d 991].) Therefore when the municipal court was established in the consolidated judicial district, the justice court in the Tracy Judicial District ceased to exist and the plaintiff, ineligible to succeed to the newly created judicial position, was lawfully divested of judicial office. (*Villanazul* v. *City of Los Angeles* (1951) 37 Cal.2d 718, 723 [235 P.2d 16]; *Corey* v. *Knight* (1957) 150 Cal.App.2d 671, 680-681 [310 P.2d 673]; § 71084.)

 Plaintiff's opposition to the Board's motion to dismiss the appeal is based solely upon his contention that he has a right to compensation for the difference between the salary paid him as the clerk of the western division and that which would have been paid him as judge of the old Tracy Judicial District had his judicial office not been abolished.[4] In his written opposition, plaintiff concedes "that for all practical purposes he has little chance of ever regaining the bench to which he was duly elected,"[5] but asks this court to deny the motion to dismiss and resolve the question of his right to compensation. Plaintiff's opposition thus limits the issues before us, in effect abandoning those grounds of appeal (discussed *ante*) which are not necessarily affected by the legislative changes which the Board contends render this appeal moot. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 428, pp. 4394-4395.)

---

[3]Section 15 of article VI of the California Constitution provides in part: "A person is ineligible to be a judge of a court of record unless for 5 years immediately preceding selection to a municipal court . . . the person has been a member of the State Bar or served as a judge of a court of record in this State. . . ."

A justice court is not a court of record. (Cal. Const., art. VI, § 1.)

[4]Former section 73720 of the enabling statute provided that the judge of the Tracy Justice Court, if not eligible to become judge of the municipal court for the western division shall, at his election, become clerk of the western division. Since ordinance 1986 became operative, plaintiff has served as clerk of the western division.

[5]See section 71701 (Stats. 1974, ch. 1493) providing that "after January 7, 1975, each justice court vacancy shall be filled by an *attorney* judge . . . ." (Italics ours.) See also section 71145.

We reject plaintiff's contention that his right to compensation is properly before us on this appeal. First, in the trial court, plaintiff did not seek to recover the differential in compensation between the salary of the clerk and the judge. He is therefore foreclosed from asserting that claim on appeal. (*Lowy* v. *United Pacific Ins. Co.* (1967) 67 Cal.2d 87, 94 [60 Cal.Rptr. 225, 429 P.2d 577]; *Jones* v. *Kvistad* (1971) 19 Cal.App.3d 836, 841-842 [97 Cal.Rptr. 100]; *Brown* v. *Meredith* (1963) 220 Cal.App.2d 762, 765 [34 Cal.Rptr. 153].) Second, plaintiff bases his claimed right to compensation on the fact that our original opinion declared unconstitutional the legislation which divested him of his judicial office. Plaintiff misconceives the effect of a grant of rehearing. An opinion is superseded by an order granting rehearing and the rule of law set forth therein is thereby eliminated. (*Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606, 624 [100 Cal.Rptr. 1, 493 P.2d 465]; *Miller & Lux Inc.* v. *James* (1919) 180 Cal. 38, 48 [179 P. 174]; see *Metropolitan Water Dist.* v. *Adams* (1942) 19 Cal.2d 463, 468 [122 P.2d 257]; 5 Cal.Jur.3d, Appellate Review, § 425, pp. 37-38.) Thus the constitutionality of the since repealed enabling legislation has not been adjudicated.

■ We turn now to the question of mootness raised by the Board's motion to dismiss the appeal.

The trial court held that former section 73704, to the extent it provided for election of judges of the district within their respective divisions rather than within the district at large, was violative of California Constitution, article VI, section 16, requiring that municipal court judges "shall be elected in their . . . districts . . . ." The trial court was also of the view that the provision of former section 73704 permitting an election of a municipal court judge in an area with a population of less than 40,000 (the western division) was incompatible with the minimum population requirement of California Constitution, article VI, section 5.[6] In reaction to the trial court's ruling and before our original opinion herein was filed, former section 73704 was amended to delete the provision relative to elections. (Stats. 1973, ch. 829, § 9, effective Jan. 1, 1974.) In our original opinion, we agreed with the trial court that the election

---

[6]Section 5 of article VI of the California Constitution provides: "Each county shall be divided into municipal court and justice court districts as provided by statute, but a city may not be divided into more than one district. Each municipal and justice court shall have one or more judges. [¶] There shall be a municipal court in each district of more than 40,000 residents and a justice court in each district of 40,000 residents or less. The number of residents shall be ascertained as provided by statute. [¶] The Legislature shall provide for the organization and prescribe the jurisdiction of municipal and justice courts. It shall prescribe for each municipal court and provide for each justice court the number, qualifications, and compensation of judges, officers, and employees."

provisions of section 73704 were unconstitutional but severable from the remainder of the statute.

Our previous but now superseded determination of unconstitutionality, however, enveloped virtually the entire statute. It was premised on the finding that the enabling legislation, purporting to establish a single municipal court district with two divisions, in reality created a separate municipal court in each division, one of which was in a "district" (the western division, consisting of the old Tracy Judicial District) which did not have the requisite population base required by the California Constitution to support a municipal court (see Cal. Const., art. VI, § 5; fn. 6, *ante*, p. 634). In amplification of our holding, we pointed out that "By engrafting the Tracy Judicial District on to the Manteca-Ripon-Escalon Judicial District, the Legislature undertook to satisfy the constitutionally mandated minimum population required for a municipal court district, but the statute by which this was accomplished was designed so that the components of the combined district would have no further effect upon each other. This model of court reorganization, if unchallenged, conceivably could lead to wholesale circumvention of the minimum population requirement of the Constitution . . . Considerations of sound judicial administration may well call for the abolition of a justice court in a district with less than 40,000 residents and the extension of municipal court jurisdiction to that area. This may be achieved constitutionally, in counties of sufficient population, by consolidating districts or redrawing district lines (Cal. Const. art. VI, § 5 . . . §§ 71040-71046) and substantively fusing the separate components into an integrated entity. It cannot constitutionally be accomplished as attempted here by the sheer alchemy of classification. Here, the Tracy Judicial District was abolished in name only . . . The reorganization is not saved from constitutional infirmity by the mere redesignation of the district as a division because the division is in reality a de facto district in an area with less than the constitutionally required population base for a municipal court district."

After our grant of a rehearing, the Legislature repealed the enabling statute and enacted a new one. (Stats. 1975, ch. 1061; §§ 73701-73716.) The new statute substantively changes the organization of the municipal court in the Manteca-Ripon-Escalon-Tracy Judicial District, abolishing the divisions created by the former statute in favor of a unified district. It authorizes two judges (§ 73702), one clerk of the court (§ 73704) and one marshal of the court (§ 73706). It provides for the succession of the present occupants of judicial office in the district to the judgeships

created by the new statute (§ 73703). Its silence on election and qualification of judges commits those matters to general law (see Cal. Const., art. VI, § 16; § 71140).

The new statute, introduced as Assembly Bill No. 2298, on May 8, 1975, was enacted as an urgency measure, becoming law on September 25, 1975.[7] By its terms it was to become operative upon the adoption by the Board of an ordinance eliminating the eastern and western divisions of the Manteca-Ripon-Escalon-Tracy Judicial District (Stats. 1975, ch. 1061, § 4). On November 4, 1975, the Board passed ordinance No. 2270 (of which we take judicial notice[8]) amending ordinance No. 1986 to delete the provisions thereof which established the eastern and western divisions of the judicial district. The ordinance became effective 30 days after its passage.

The situation with which we are now faced is materially different from that which confronted us at the time our original decision was rendered. The only "issue" before us now is the constitutionality of legislation that has been repealed. The repeal of legislation under attack prior to appellate decision may well render the issues in the pending appeal moot (*Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 [41 Cal.Rptr. 468, 396 P.2d 924]; *Callie* v. *Board of Supervisors* (1969) 1 Cal.App.3d 13, 18 [81 Cal.Rptr. 440]). It is our function " 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [us]. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' [Citations.]" (*Consol. etc. Corp.* v. *United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725], quoting from *Mills* v. *Green* (1895) 159 U.S. 651, 653 [40 L.Ed. 293, 294, 16 S.Ct. 132]; *Paul* v. *Milk Depots, Inc., supra*, 62 Cal.2d at p. 132.)

---

[7]Section 5 of chapter 1061, Statute, 1975, sets forth the facts constituting the urgency: "Existing statutory provisions relating to the municipal court in the Manteca-Ripon-Escalon-Tracy Judicial District of the County of San Joaquin are presently being challenged in the appellate courts of this state. In order to provide statutory clarification for the continuing operation of this court at the earliest feasible time, it is necessary that this act take effect immediately."

[8]Evidence Code sections 452, subdivision (b), 459.

In the present posture of the case, a decision on the merits would involve the court in a purely academic exercise. There is no actual controversy upon which a judgment could operate nor any effective relief which could be granted to either party. (See *Paul* v. *Milk Depots, Inc., supra,* at p. 132.) Accordingly, we shall reverse the judgment and remand the cause to the trial court with directions to dismiss the action as having become moot prior to final determination on appeal. (*Paul* v. *Milk Depots, Inc., supra,* at p. 133; *Callie* v. *Board of Supervisors, supra,* 1 Cal.App.3d at p. 19.)

Reversal with directions to the trial court to dismiss is the equivalent of dismissal of the appeal, but avoids the ambiguity of the latter procedure which does not dispose of a subsisting trial court judgment in a case wherein the issues are moot. ■ Ordinarily, for purposes of recovering costs on appeal, respondent is the prevailing party in the event the appeal is dismissed (rule 26(a), Cal. Rules of Court). Notwithstanding, an appellate court has inherent power to make any award of costs which it deems proper when the interests of justice so require. (Rule 26(a); 6 Witkin, Cal. Procedure, *supra,* §§ 583-585, pp. 4515-4517.) Although plaintiff has lost this appeal and with it the case, he achieved an ephemeral success in this court which precipitated the very legislative changes which turned his victory from palliative to Pyrrhic (see fn. 7, *ante,* p. 636). Under the circumstances, we believe it would be inequitable to require plaintiff to bear the costs of this appeal.

The judgment is reversed with directions to the trial court to dismiss the action. Plaintiff is to recover his costs on appeal.

Regan, J., concurred.