Filed 12/10/25  P. v. Mendoza CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARK ANTHONY MENDOZA, SR.,<br><br>    Defendant and Appellant. | F088900<br><br>(Super. Ct. No. BF138387A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Lewis A. Martinez and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 2013, defendant Mark Anthony Mendoza, Sr., was convicted of—among other things—first degree premeditated murder with special circumstances (including a gang-murder special circumstance) (count 1) and shooting from a motor vehicle at a person outside the vehicle (count 2). He was found—among other things—to have committed these offenses for the benefit of, at the direction of, or in association with a criminal street gang and sustained two strike priors and two serious felony priors.[1] For the murder conviction, defendant received life without the possibility of parole (LWOP) plus other enhancements. For the shooting conviction, the trial court imposed punishment but stayed execution thereof.

In 2024, defendant was resentenced pursuant to Penal Code[2] section 1172.75. On appeal therefrom, he makes two contentions. First, in view of Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill No. 333), the gang-murder special circumstance on count 1 and the gang enhancement on count 2 should be reversed and the prosecution should be given the opportunity to retry them on remand. Second, when the trial court calculated the minimum term of defendant's indeterminate sentence on count 2 as per section 667, subdivision (e)(2)(A)(iii), it erroneously incorporated stricken enhancements as well as the upper term for shooting from a motor vehicle at a person outside the vehicle, i.e., seven years. Regarding the first contention, the Attorney General asserts defendant forfeited the issue. Alternatively, the Attorney General concedes the special circumstance and gang enhancement should be reversed and the matter remanded to allow the prosecution to retry them. Regarding the second contention, the Attorney General concedes the minimum term wrongly incorporated stricken enhancements but

---

[1] A "strike prior" refers to a felony conviction that triggers the "Three Strikes" sentencing scheme. (*People v. Fletcher* (2025) 18 Cal.5th 576, 582.)

[2] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

maintains the trial court was able to make use of the seven-year upper term in its calculation.

Assuming, arguendo, defendant did not properly preserve his first claim for appellate review, we exercise our discretion to consider it.  (*People v. Williams* (1998) 17 Cal.4th 148, 162, fn. 6.)  The parties agree—and we accept—that (1) the gang-murder special circumstance on count 1 and the gang enhancement on count 2 should be reversed and the prosecution should be given the opportunity to retry them on remand; and (2) the minimum term of defendant's indeterminate sentence on count 2 erroneously incorporated stricken enhancements.  We further conclude the trial court was permitted to utilize the seven-year upper term in calculating the foregoing minimum term.

## BACKGROUND

Defendant was charged with first degree premeditated murder (§§ 187, subd. (a), 189, subd. (a) [count 1]), willfully and maliciously discharging a firearm from a motor vehicle at another person outside the vehicle (former § 12034, subd. (c) [count 2]), possession of a firearm by a convicted felon (former § 12021, subd. (a)(1) [count 3]), possession of ammunition by a convicted felon (former § 12316, subd. (b)(1) [count 4]), and active gang participation (§ 186.22, subd. (a) [count 5]).  The information further alleged:  (1) as to count 1, defendant personally used a firearm (§ 12022.5, subd. (a)), was an active gang participant who carried out the murder to further the activities of the gang (§ 190.2, subd. (a)(22)), and discharged a firearm from a motor vehicle at another person outside the vehicle with the intent to inflict death (*id.*, subd. (a)(21)); (2) as to counts 1 and 2, he personally and intentionally discharged a firearm and caused the victim's death (§ 12022.53, subd. (d)); (3) as to counts 1 through 4, he committed the offense for the benefit of, at the direction of, or in association with a gang (§ 186.22, subd. (b)(1)); and (4) as to all counts, he was previously convicted twice of first degree robbery—a qualifying strike under the Three Strikes law (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–

3.

(e)) and a serious felony (§ 667, subd. (a)(1))—and previously served three separate prison terms (§ 667.5, former subd. (b)).

On February 28, 2013, the jury found defendant guilty as charged and found true the murder special circumstance allegations as well as the gang and firearm allegations. In a bifurcated proceeding, the trial court found true the prior conviction and prior prison term allegations. On March 29, 2013, defendant was sentenced to (1) LWOP plus 25 years to life for the firearm discharge enhancement and three years for the three prior prison term enhancements on count 1; and (2) a consecutive upper term of three years plus four years for the gang enhancement on count 4. With respect to count 1, the trial court imposed an additional 10 years for the gang enhancement but stayed execution thereof pursuant to rule 4.447 of the California Rules of Court. With respect to count 2, the court imposed the upper term of seven years plus 25 years to life for the firearm discharge enhancement and five years for the gang enhancement but stayed execution thereof pursuant to section 654. With respect to count 3, the court imposed the upper term of three years plus four years for the gang enhancement but stayed execution thereof pursuant to section 654. With respect to count 5, the court imposed the upper term of three years but stayed execution thereof pursuant to section 654.

On appeal, this court reversed defendant's conviction on count 5 and the gang enhancements on counts 3 and 4 on the grounds of insufficient evidence. This court also recognized the trial court found true the two strike priors and two serious felony priors but neither applied the Three Strikes law nor imposed prior serious felony enhancements. The matter was remanded for resentencing and the correction of sentencing errors. (*People v. Mendoza* (May 27, 2015, F067023) [nonpub. opn.].)

On September 9, 2015, defendant was resentenced to (1) LWOP plus 25 years to life for the firearm discharge enhancement, 10 years for the two prior serious felony enhancements, and one year for one prior prison term enhancement on count 1; and (2) a consecutive doubled upper term of six years plus three years for the three prior prison

4.

term enhancements on count 4. With respect to count 2, the court imposed 48 years to life plus 25 years to life for the firearm discharge enhancement, 10 years for the two prior serious felony enhancements, five years for the gang enhancement, and one year for one prior prison term enhancement but stayed execution thereof pursuant to section 654. With respect to count 3, the court imposed the doubled upper term of six years but stayed execution thereof pursuant to section 654.

In 2019, the Legislature passed Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill No. 136), which amended section 667.5 (Stats. 2019, ch. 590, § 1). The new law took effect January 1, 2020. (See Cal. Const., art. IV, § 8, subd. (c)(1); Gov. Code, § 9600, subd. (a).)

In 2021, the Legislature passed Assembly Bill No. 333, which amended section 186.22 (Stats. 2021, ch. 699, § 4); Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill No. 483), which added former section 1171.1 (Stats. 2021, ch. 728, § 3); and Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567), which amended section 1170 (Stats. 2021, ch. 731, § 1.3 et seq.). The new laws took effect January 1, 2022. (See Cal. Const., art. IV, § 8, subd. (c)(1); Gov. Code, § 9600, subd. (a).) Section 1171.1 was subsequently renumbered section 1172.75. (Stats. 2022, ch. 58, § 12; *People v. Carter* (2023) 97 Cal.App.5th 960, 966 (*Carter*).)

In late 2023, defendant was identified as an inmate eligible for resentencing under section 1172.75. Thereafter, he filed sentencing statements accompanied by exhibits. On October 23, 2024, the trial court conducted a section 1172.75 resentencing hearing. The court struck all prior prison term enhancements and one of the prior serious felony enhancements. Defendant received (1) LWOP plus 25 years to life for the firearm discharge enhancement and five years for the prior serious felony enhancement on count 1; and (2) a consecutive doubled middle term of four years on count 4. With respect to count 2, the court imposed 48 years to life plus 25 years to life for the firearm discharge enhancement, five years for the prior serious felony enhancement, and five

5.

years for the gang enhancement but stayed execution thereof pursuant to section 654. With respect to count 3, the court imposed the doubled middle term of four years but stayed execution thereof pursuant to section 654.

## DISCUSSION

**I.     The parties agree the gang-murder special circumstance on count 1 and the gang enhancement on count 2 should be reversed and the prosecution should be given the opportunity to retry them on remand.**

"The penalty for a defendant who is found guilty of murder in the first degree is death or [LWOP] if . . . [¶] . . . [¶] . . . [t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang."  (§ 190.2, subd. (a)(22).)  "[A] person who is convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the person has been convicted, be punished . . . ."  (§ 186.22, subd. (b)(1).)

Prior to 2022, section 186.22, former subdivision (f) defined a "criminal street gang" as "any ongoing organization, association, or group of three or more persons" "whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity."  Section 186.22, former subdivision (e) defined "pattern of criminal gang activity" as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more [predicate] offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . . ."  Under these earlier provisions, "a predicate offense may be established by

6.

evidence of the charged offense" (*People v. Tran* (2011) 51 Cal.4th 1040, 1046) and "it was unnecessary to prove predicate offenses were gang related" (*People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822, fn. omitted).

"Assembly Bill [No.] 333 made the following changes . . . : First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill [No.] 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, Assembly Bill [No.] 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, Assembly Bill [No.] 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*People v. Tran* (2022) 13 Cal.5th 1169, 1206.)

On appeal, defendant argues "the ameliorative changes to the gang statute apply retroactively to this case," the evidence "no longer satisfies the element of *criminal street gang*, in particular its component of *a pattern of criminal activity*," the jury instructions on the gang-murder special circumstance and gang enhancement issued at trial "explicitly excused the jury from finding the new elements," and these instructional errors were not harmless beyond a reasonable doubt. The Attorney General agrees "[Assembly Bill No.] 333's amendments to section 186.22 apply retroactively" (boldface omitted), "the

7.

predicate offenses introduced at trial do not meet the new elements of section 186.22 as amended by [Assembly Bill No.] 333," and "any error would not be harmless beyond a reasonable doubt" but points out defendant "failed to raise" "[any] claim regarding the application of [Assembly Bill No.] 333 to his gang enhancement and gang-murder special circumstance" "either at his section 1172.75 resentencing hearing or in related briefing." Assuming, arguendo, defendant forfeited the claim, we exercise our discretion to consider it in the interests of justice. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 162, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party."].) Having done so, we accept the Attorney General's concessions.

## II. The parties agree the trial court's calculation of the minimum term of defendant's indeterminate sentence on count 2 erroneously incorporated stricken enhancements.

Section 667, subdivision (e)(2)(A) reads in part:

"[I]f a defendant has two or more prior serious or violent felony convictions . . . that have been pled and proved, the term of the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greatest of:

"(i)  Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior serious or violent felony convictions.

"(ii)  Imprisonment in the state prison for 25 years.

"(iii)  The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046."

"[I]f an enhancement or its punishment is stricken under section 1385, it cannot be used to increase any aspect of punishment." (*People v. Flores* (2021) 63 Cal.App.5th 368, 383.)  "Stricken enhancements may not be used to 'add any punishment' to the sentence,

8.

whether as an additional determinate term or as a means of lengthening the minimum indeterminate term. [Citation.]" (*Id.* at p. 385, italics omitted.)

At the original March 29, 2013 sentencing hearing, the trial court imposed the upper term of seven years (former § 12034, subd. (c); see § 26100, subd. (c)) plus 25 years to life for the firearm discharge enhancement and five years for the gang enhancement on count 2. This sentence, however, did not account for defendant's two strike priors and two serious felony priors. The court corrected this oversight at the September 9, 2015 resentencing hearing, imposing 48 years to life plus 25 years to life for the firearm discharge enhancement, 10 years for the two prior serious felony enhancements, five years for the gang enhancement, and one year for one prior prison term enhancement. Pursuant to section 667, subdivision (e)(2)(A)(iii), the court calculated the 48-year minimum term by combining (1) the seven-year upper term for willfully and maliciously discharging a firearm from a motor vehicle at another person outside the vehicle; (2) the 25-year minimum term for the firearm discharge enhancement; (3) 10 years for the two prior serious felony enhancements; (4) five years for the gang enhancement; and (5) one year for the prior prison term enhancement. At the section 1172.75 resentencing hearing on October 23, 2024, the court struck all prior prison term enhancements and one of the prior serious felony enhancements. Yet, on count 2, the court reimposed the 48-year minimum term, which—as demonstrated above—subsumed these stricken enhancements.

On appeal, defendant argues "the court should not have imposed a minimum term of 48 years by including the one-year prison-prior enhancement and the five-year serious-felony enhancement." The Attorney General "agrees that the court should not have included the stricken one-year prior prison term and five-year prior felony conviction in its calculation of the count 2 minimum term." We accept the Attorney General's concession.

**III. The trial court was permitted to utilize the seven-year upper term in calculating the minimum term of defendant's indeterminate sentence on count 2.**

"Before January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a prior prison term and had not remained free of custody for at least five years. [Citation.] Effective January 1, 2020, Senate Bill No. 136 . . . amended section 667.5 by limiting the enhancement to only prior prison terms served for sexually violent offenses. [Citation.] Enhancements based on prior prison terms served for other offenses became legally invalid. [Citation.]" (*Carter*, *supra*, 97 Cal.App.5th at p. 966.)

Before 2022, "former section 1170[, subdivision ](b) gave a sentencing court broad discretion to select among three terms and impose a sentence that in its judgment served the interests of justice." (*People v. Lynch* (2024) 16 Cal.5th 730, 773.) As amended by Senate Bill No. 567, section 1170, subdivision (b) now provides "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term" (§ 1170, subd. (b)(1)) unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial" (*id.*, subd. (b)(2)).

"In 2021, the Legislature enacted Senate Bill No. 483 . . . , which, among other things, made the changes implemented by Senate Bill [No.] 136 [(2019–2020 Reg. Sess.)] retroactive. [Citation.] Senate Bill [No.] 483 added former section 1171.1, later renumbered as section 1172.75 [citation], to the Penal Code. [Citation.]" (*Carter*, *supra*, 97 Cal.App.5th at p. 966, fn. omitted.) Under section 1172.75, subdivision (a), "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and

Institutions Code is legally invalid." "Once the Department of Corrections and Rehabilitation identifies those persons 'currently serving a term for a judgment that includes an enhancement described in subdivision (a)' to the sentencing court, 'the court shall recall the sentence and resentence the defendant.' " (*People v. Monroe* (2022) 85 Cal.App.5th 393, 399, quoting § 1172.75, subds. (b) & (c).) Resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety" (§ 1172.75, subd. (d)(1)) and "shall not result in a longer sentence than the one originally imposed" (*ibid*.). "The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).) "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (d)(3).) "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (d)(4).)

On appeal, defendant contends the trial court's calculation of the minimum term of the indeterminate sentence on count 2 as per section 667, subdivision (e)(2)(A)(iii) should not have included the seven-year upper term because he "did not stipulate to aggravating facts" "[n]or had the jury found any aggravating facts true beyond a

reasonable doubt." He relies on the language of sections 1170, subdivision (b)(2) and 1172.75, subdivision (d)(2). However, defendant ignores the language of section 1172.75, subdivision (d)(4), which we find not only relevant but also dispositive.

"Our goal in reviewing statutory language is to determine the legislative intent of the statute. [Citation.] 'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.' [Citation.] When the statutory language is unambiguous, its plain meaning controls. [Citation.] We also 'generally must "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose," and [the Supreme Court] ha[s] warned that "[a] construction making some words surplusage is to be avoided." ' [Citation.]" (*People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466 (*Brannon-Thompson*).)

Section 1172.75, subdivision (d)(2) "states generally that a trial court must apply ameliorative changes in the law when resentencing" (*Brannon-Thompson*, *supra*, 104 Cal.App.5th at p. 466), including "the 2022 amendments to section 1170, subdivision (b) that require aggravating factors be proven beyond a reasonable doubt before the upper term can be imposed" (*ibid.*). As noted, however, section 1172.75, subdivision (d)(4) provides:

> "*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Italics added.)

"Giving this language its plain meaning, it is evident the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) [to] apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing." (*Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.) In other words, "section

12.

1172.75, subdivision (d)(4) carves out an exception to the general rule that all ameliorative changes to the law must be applied at a section 1172.75 resentencing and does not require aggravating factors to be found true beyond a reasonable doubt if the upper term was previously imposed." (*Id.* at p. 458; see *People v. Mathis* (2025) 111 Cal.App.5th 359, 374, review granted Aug. 13, 2025, S291628 (*Mathis*) ["[M]ore specific legislative enactments control over general ones."].)

In his reply brief, defendant cites *People v. Gonzalez* (2024) 107 Cal.App.5th 312 (*Gonzalez*), in which the Sixth District Court of Appeal opposed *Brannon-Thompson*'s interpretation of section 1172.75, subdivision (d)(4). We find *Gonzalez*'s rationale unpersuasive. First, in evaluating the statutory language, *Gonzalez* readily "acknowledge[d] that the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence." (*Gonzalez*, *supra*, at pp. 328–329.) At this point, the inquiry should have ended. (See *People v. Snook* (1997) 16 Cal.4th 1210, 1215 ["If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs."]; *People v. Reid* (2016) 246 Cal.App.4th 822, 830 [" 'Where [the Legislature] has manifested its intention, [courts] may not manufacture ambiguity in order to defeat that intent.' "]; *Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 716 ["When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it."].) Yet, *Gonzalez* concluded section 1172.75, subdivision (d)(4) must be construed to "*restrict the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term." (*Gonzalez*, *supra*, at p. 329.) Such an interpretation makes sense only if section 1172.75, subdivision (d)(4) was written as follows:

13.

*The court may not impose a sentence exceeding the middle term unless the court originally imposed the upper term, there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.*

However, the Legislature did not draft section 1172.75, subdivision (d)(4) in this manner. An appellate court " 'must "interpret a statute consistently with the meaning derived from its grammatical structure." ' [Citation.]" (*Surfrider Foundation v. California Regional Water Quality Control Bd.* (2012) 211 Cal.App.4th 557, 576.) Instead, *Gonzalez* "rewr[o]te [the] statute to posit an unexpressed intent." (*Morton Engineering & Construction, Inc. v. Patscheck*, *supra*, 87 Cal.App.4th at p. 716.)

Second, *Gonzalez* believed *Brannon-Thompson*'s interpretation of section 1172.75, subdivision (d)(4) "would potentially result in the statute impermissibly exempting defendants who previously received upper term sentences from the rule that eligibility for any upper term sentence depends on 'facts that have been established consistently with Sixth Amendment principles.' [Citation.]" (*Gonzalez*, *supra*, 107 Cal.App.5th at p. 329.) Thus, citing the "doctrine of constitutional avoidance" (*id.* at p. 330), *Gonzalez* adopted its construction to "avoid[] running afoul of the Sixth Amendment" (*ibid.*). This stance is fallacious. When defendant was resentenced in 2015, section 1170, former subdivision (b) "granted the trial court broad discretion to select any of the three applicable prison terms" (*Mathis*, *supra*, 111 Cal.App.5th at p. 373, review granted) and "there was no requirement for the judge to find a particular fact to justify imposition of the upper term" (*ibid.*). This sentencing scheme, which "had long been in effect at the time that the Legislature established the resentencing procedures applicable here" (*ibid.*), "was one that ' "everyone agrees" ' raised no Sixth Amendment concerns" (*id.* at p. 371, quoting *People v. Lynch*, *supra*, 16 Cal.5th at p. 747). "Where, as here, the trial court elects to retain an upper term sentence that complied with the Sixth

14.

Amendment when originally imposed, the court need not engage in any additional factfinding under section 1172.75, subdivision (d)(4)." (*Mathis*, *supra*, at pp. 373–374.)

**DISPOSITION**

The gang-murder special circumstance on count 1 and the gang enhancement on count 2 are reversed and the matter is remanded for resentencing. On remand, the prosecution shall be afforded the opportunity to retry the gang-murder special circumstance and gang enhancement. In addition, the trial court shall recalculate the minimum term of defendant's indeterminate sentence on count 2. In all other respects, the judgment is affirmed.

DETJEN, J.

WE CONCUR:

HILL, P. J.

GUERRA, J.*

---

* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.